PAINE *v.* LUDLAM.

(Division B.  Feb. 5, 1934.)

[152 So. 486.  No. 31008.]

(1)

**Ben F. Cameron,** of Meridian, for appellant.

E. B. Williams, of Poplarville, Gilbert & Cameron and Dunn & Snow, all of Meridian, for appellee.

Argued orally by **Ben F. Cameron,** for appellant, and by **V. W. Gilbert,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

B. F. Paine filed suit, in the circuit court of Lauderdale county, against W. V. Ludlam, for twelve thousand dollars, alleging that the plaintiff was the owner of nine shares of stock in a close corporation known as F. W. Williams, State Agent, Incorporated, and that, under an agreement made an exhibit to the declaration, the defendant and others agreed to purchase the stock of a deceased or retiring member of the corporation; that no person owned any stock except people who were employed by the corporation which was an insurance agency representing the U. S. F. & G. Company, and other corporations in the state; and that the plaintiff tendered to said defendant the stock so owned by plaintiff, and the defendant refused to buy the stock under the terms of the contract, whereupon plaintiff demanded judgment.

The declaration was demurred to, and the demurrer was sustained.

The contract made an exhibit to the declaration provides that, in consideration of the mutual benefits flowing each to the other, ''we, the undersigned stockholders (setting out their names) hereby agree as follows, to-wit:—

''2. Upon the death or withdrawal of any record stockholder of the corporation, the remaining stockholders hereby bind themselves severally to purchase from the personal representatives of the deceased stockholder, or the stockholder withdrawing, within ninety days from the date of his or her death or withdrawal, the stock in the corporation owned by him or her at that time; and

each of us hereby binds his or her heirs and personal representatives to sell to the remaining stockholders the stock in the said corporation so owned by us at the date of our death or withdrawal; the purchase price to be paid for the stock hereby agreed to be bought and sold and the value of the stock, shall be fixed and determined upon the following basis, to-wit;—one hundred and ten per cent of the average, annual profits of the corporation during the one preceding calendar year prior to the death or withdrawal of the stockholder, the calendar year in which the stockholder dies or withdraws, and the calendar year immediately subsequent to the calendar year in which the death or withdrawal of the stockholder occurs, . . . the profits to be the average yearly net commissions, together with any other earnings of the insurance agency, including salaries, bonuses or contingent compensation coming from the United States Fidelity and Guaranty Company; the Fidelity and Guaranty Fire Corporation, or any other company or companies represented or operated by it, for the three year period thus described, less all expenses except salaries and allowances to stockholders; and added thereto the deceased's or withdrawing stockholder's share in any surplus, contingent or reserve funds which are now or may be set up on the books of the corporation and whether there carried in the name of the corporation or otherwise. If any part of any such surplus, contingent or reserve fund is invested in or represented by bonds, certificates of stock, notes, personal property or real estate, the actual amount of any such surplus, contingent or reserve fund at the date of death or withdrawal of the stockholder, shall be determined by the current market quotations of the board of exchange on which such bonds, certificates of stock, etc., are listed and if there are not current market quotations for any such bonds, certificates of stock, notes, personal or real property, and the value of such investments cannot be readily fixed or ascertained, the value

of any such investments shall be determined by a committee of three, one to be appointed by the stockholder withdrawing or the personal representatives of the deceased stockholder, one by the remaining or purchasing stockholder, and the other to be selected by the two so appointed. The interest of the stockholder withdrawing or the deceased stockholder in such surplus, contingent or reserve funds, shall be his or her pro rata share in the sum of the cash and investments representing such surplus, contingent or reserve fund, with the values of the investments determined as provided above.''

Section 3 of the contract provides that the remaining or surviving stockholders are to purchase the stock of the withdrawing or deceased stockholder in proportion to their respective holdings at the date the stockholder withdraws or dies, at the price fixed in paragraph 2, and sets out the manner of making payment therefor.

Section 4 of the contract provides as follows: ''4. In the event any stockholder withdraws from the corporation, or if for any other reason than death his relationship with the corporation shall be severed, the remaining stockholders shall have an option for ninety days after the severance to purchase his stock at a valued price to be determined in the same manner as the value is to be determined in the case of death of any stockholder. But should the remaining stockholders not exercise this option within the time limit, then the stockholder withdrawing may sell his stock to any individual stockholder, or to any person who may be in the market.''

It was then provided in section 5 of the contract that: ''5. In the event any stockholder shall have pledged or hypothecated his or her stock and is unable or unwilling to redeem same as provided for in the pledge contract, then he or she agrees to notify the other stockholders of his or her inability or unwillingness to redeem, at least five days before the maturity of the pledge contract, and hereby agrees to give the other stockholders the right

to redeem the pledged stock; and also hereby agrees to give an option to the other stockholders for a period of ninety days from the date of the stock's redemption, within which they may purchase the redeemed stock at a price and upon a value herein specified as the value to be placed on stock owned by a deceased stockholder.''

This contract was signed on June 14, 1933, and the declaration was filed on October 5, 1933.

It will be noted from section 2 above mentioned that the stockholder did not obligate himself to sell his stock on retiring or withdrawing, but only bound his personal representatives or heirs, and that the value was to be determined by the use of a three-year period, one preceding the death or withdrawal of the stockholder, the year of the death or withdrawal of the stockholder, and the year subsequent thereto. Consequently, this section is only operative for the purpose of binding' the stockholder dying, through his representatives or heirs, to sell the stock, and by the other stockholders to purchase in such event at the price and under the arrangement made in said section.

We think, under section 4 of the contract, that, when a stockholder withdraws, the other stockholders have the option for ninety days, to purchase under the arrangement provided in section 2, and the contract provides that, if they do not do so, the withdrawing stockholder may then sell his stock to others.

The contract is to be construed as a whole, each section thereof to be given effect, and all of its terms to be considered together to determine the meaning of the parties who executed same.

We are unable to segregate section 4 and, when it is construed with section 2 and it is remembered that the withdrawing stockholder does not bind himself to sell to others, section 4 comes into play and governs the rights and obligations of the parties where one of the stockholders withdraws.

It is further to be noted that the suit was filed before it was possible to determine the value of the stock, and that it is not shown that the plaintiff selected any person to determine the value, or that a request was made of the other stockholders to select any such person to pass upon the value of the stock, under the terms of the contract.

However, in construing the contract, we have reached the conclusion that this feature was not brought into force, because there was no exercise of the option under section 4 of the contract.

Affirmed.